UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Citizens Bank of Massachusetts,<br><br>                                          Plaintiff<br><br>              v.<br><br>Robert Louis Marrama,<br><br>                                          Defendant | Adversary Proceeding<br>Docket Nos.   03-1443 AND<br>                        03-1148 |
| Robert Louis Marrama,<br><br>                                          Appellant,<br><br>              v.<br><br>Citizens Bank of Massachusetts,<br><br>                                          Appelee | BANKRUPTCY APPEAL<br>Docket No.:   04-12109-PBS |

BRIEF FOR APPELLANT

FOR THE APPELLANT:
David G. Baker, Esq.
105 Union Wharf
Boston, MA  02109
617-367-4260
BBO# 634889

TABLE OF CONTENTS

I.      BASIS OF APPELLATE JURISDICTION.................................................................4
II.     STATEMENT OF ISSUE PRESENTED AND STANDARD OF REVIEW...................4
III.    STATEMENT OF THE CASE....................................................................................4
IV.     ARGUMENT ............................................................................................................6
        A.      Summary of the Argument...................................................................6
        B.      Summary Judgment standard ..............................................................6
                i.      Counts I, II and III - §727(a)(2)(A).......................................7
                        a.    The Maine transfer.......................................................8
                        b.    The Bolleterio transfers ...........................................10
                        c.    The Cullen transfers..................................................11
                ii.     The assertion of the Fifth Amendment Privilege................12
                iii.    Count IV – 11 USC §727(a)(2)(A) ......................................14
                iv.     Count V – 1 USC §727(a)(3)................................................14
                v.      Count VI – 11 USC §727(a)(4)(A) ......................................16
                vi.     Count VII – 11 USC §727(a)(6)...........................................17
V.      CONCLUSION ....................................................................................................18

TABLE OF AUTHORITIES

CASES

Arcari v. Marder, 225 B.R. 253 (D.Mass. 1998).......................................................................6
FDIC v. Anchor Properties, 13 F.3d 27 (1st Cir. 1994) .............................................................8
Field v. Mans, 116 S.Ct. 437, 516 U.S. 59, 133 L.Ed.2d 351 (1995)......................................17
In re Barman, 237 B.R. 342 (Bkrtcy.E.D. Mich. 1999)...........................................................18
In re Baylis, 313 F.3d 9 (1st Cir. 2002)......................................................................................9
In re Burgess, 955 F.2d 134 (1st Cir. 1992)..............................................................................17
In re Carp, 340 F.3d 15 (1st Cir. 2003)................................................................................4, 12
In re Chavin, 150 F.3d 726, 728 (7th Cir.1998)...................................................................9, 14
In re Cotsibas, 262 B.R. 182 (Bkrtcy.D.N.H. 2001).................................................................18
In re Cromer, 214 B.R. 86 (Bkrtcy.E.D.N.Y. 1997)................................................................15
In re Finney, 992 F.2d 43 (4th Cir. 1993) ................................................................................18
In re Hammitt, 289 B.R. 670 (Bkrtcy.C.D.Ill., 2001)....................................................9, 10, 14
In re Hayes, 229 B.R. 253 fn. 7 (1st Cir. BAP 1999) ................................................................6
In re Marrama, 307 BR 322 (Bkrtcy.D.Mass. 2004) ................................................................5
In re Ross, 217 B.R. 319 (Bkrtcy.M.D.Fla. 1998).....................................................................9
In re Salzman et al, 61 B.R. 878 (2nd Cir. 1986) .....................................................................12
In re Sharpe, 305 B.R. 572 (Bkrtcy.M.D.Fla 2003) ................................................................18
In re Varasso (Desmond v. Varasso), 37 F.3d 760 (1st Cir. 1994) ......................................7, 16
In re Warner, 247 B.R. 24 (1st Cir. BAP 2000) .......................................................................16
Palmacci v. Umpierrez, 121 F.3d 781 (1st Cir. 1997) ..................................................6, 13, 14
Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)..................9
Serafino v. Hasbro, Inc., 82 F.3d 515 (1st Cir. (Mass.), 1996)..........................................13, 14
U.S. v. U.S. Currency, $81,000.00, 189 F.3d 28 (1st Cir. (Mass.),1999)...................................11

<u>STATUTES</u>

11 USC §§344 ..........................................................................................................4
11 USC §341 ...........................................................................................................4
11 USC §523(c) .......................................................................................................6
11 USC §706 ...........................................................................................................4
11 USC §727 ......................................................................................................6, 15
28 USC §157 ...........................................................................................................4
28 USC §158(a) .......................................................................................................4
28 USC §158(c) .......................................................................................................4

<u>RULES</u>

FRBP 4005 ..............................................................................................................6

I.    BASIS OF APPELLATE JURISDICTION

This is an appeal from judgments, orders or decrees of the Bankruptcy Court for the District of Massachusetts (Eastern Division).  The matter before the Bankruptcy Court was a Motion for Summary Judgment in an Adversary Proceeding brought pursuant to Fed.R.Bankr.Pro. 7001 seeking to deny the debtor/appellant a discharge, which is a core proceeding pursuant to 28 USC §157(b)(2).  This court has jurisdiction to hear this appeal pursuant to 28 USC §158(a).  The debtor/appellant has elected to proceed to District Court pursuant to 28 USC §158(c).

II.    STATEMENT OF ISSUE PRESENTED AND STANDARD OF REVIEW

The issue presented is whether the Bankruptcy Court correctly granted summary judgment where the Bankruptcy Court drew an inference or inferences against the debtor based on his exercise of his Fifth Amendment right against self-incrimination.  The appellant submits that resolution of this issue requires interpretation of the applicable law, in particular 11 USC §§344 and 706 and Fed.R.Bankr.Pro. 4005.  "The application of the Bankruptcy Code to a particular case poses a mixed question of law and fact, which this court reviews for clear error unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved."  In re Carp, 340 F.3d 15 (1st Cir. 2003).

III.    STATEMENT OF THE CASE

The bankruptcy case was commenced by filing a Petition with the Clerk of the Bankruptcy Court on March 11, 2003.  *See Docket of the underlying case*.  Mark DeGiacomo was appointed trustee (hereinafter "DeGiacomo").  The Meeting of Creditors required by 11 USC §341 commenced on April 24, 2003, and was continued several times, finally concluding on November 18, 2003.  At the first meeting, DeGiacomo recommended certain amendments to the schedules, which were made.  Appellee Citizens Bank was represented at all of the §341 meetings.

Prior to the petition date, Marrama had had a business relationship with Citizens Bank and its predecessors (referred to collectively hereinafter as "Citizens") for about 14 years.

4

Marrama owned and operated a business which sold and installed various types of flooring material.  Citizens provided operating capital for the business through a line of credit, secured by corporate assets and personally guaranteed by Marrama.  At some point, Marrama's corporation began to have cash flow difficulties due to non-payment by numerous customers.  Marrama applied to Citizens for an increase in the credit line.  Citizens not only denied the request, it shut down the line of credit and commenced a collection action in the Superior Court for Suffolk County.  The litigation[1] was bitter and contentious, and ultimately Citizens was allowed to seize and liquidate all of the corporate assets.  On several occasions during the litigation, Citizens explicitly accused him of criminal behavior, in response to which Marrama asserted his right against self incrimination under the Fifth Amendment to the Constitution.

His business and only source of income having been extinguished, Marrama began having difficulty meeting his personal obligations, including the mortgages on his residence[2].  In an effort to avoid foreclosure and find some way to get back to work, Marrama commenced a bankruptcy case.  Ultimately he was able to find work, and he has made arrangements for forbearance, of one sort or another, with the two mortgagees holding consensual mortgages on his home.  Once he re-established a source of income, Marrama also sought to convert his case to chapter 13, but both the Trustee and Citizens opposed that effort, and it was denied by the bankruptcy court.   That decision is presently on appeal before the First Circuit Court of Appeals.

The docket of the case reflects the fact that Citizens continued its contumelious ways, opposing virtually every effort Marrama made to obtain the benefits available under the bankruptcy code.  Citizens even objected to Marrama's assertion of a homestead exemption; the bankruptcy court, however, overruled that objection.  In re Marrama, 307 BR 322 (Bkrtcy. D.Mass. 2004).  Citizens also made several efforts to conduct its own discovery, independent of the Chapter 7 trustee.  While Marrama did respond to some questions, Citizens continued to accuse him, in court papers, of criminal activity, frightening him into further assertions of the Fifth Amendment privilege.  Citizens then commenced the present action to deny him a discharge, and included counts charging him with criminal activity.  In the face of such ongoing accusations, Marrama properly exercised his Fifth Amendment rights.  Nonetheless, the bankruptcy court explicitly drew an inference against Marrama based on that exercise.  The

---

[1]  Marrama was represented by other counsel in that matter.
[2]  Citizens did NOT take a mortgage on Marrama's residence, but did obtain an attachment.

bankruptcy court never made any effort to determine whether the privilege was properly exercised, nor was Marrama ever offered immunity.

Although it appears that the only ground for denial was the exercise of the Fifth Amendment right, this memorandum addresses the other grounds asserted by Citizens as well, since "if the bankruptcy court's findings are supportable on any reasonable view of the record, we are bound to uphold them", Carp, supra.


IV.    ARGUMENT

A.    Summary of the Argument

By its complaint and its motion for Summary Judgment, Citizens argued only that Marrama should be denied a discharge pursuant to various sections of 11 USC §727.  It did not seek to except its debt from discharge pursuant to 11 USC §523(c), and the time to do so has expired.  FRBP 4007(c).  In objecting to Marrama's discharge under §727, Citizens had the burden of proof and the risk of non-persuasion.  FRBP 4005; Commerce Bank and Trust Company v. Burgess, 955 F.2d 134 (1st Cir. 1992).

The statutory requirements for a discharge in bankruptcy are "construed liberally in favor of the debtor" and " '[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' "  Commerce Bank and cases cited therein; Palmacci v. Umpierrez, 121 F.3d 781 (1st Cir. 1997) .  "For §727 objections to discharge, the substantive evidentiary standard of proof is preponderance of the evidence."  In re Hayes, 229 B.R. 253 fn. 7 (1st Cir. BAP 1999), and cases cited therein.  It is Marrama's contention that Citizens failed to meet that burden and the bankruptcy court must be reversed and the matter remanded for further proceedings.


B.    Summary Judgment standard

The District Court in Arcari v. Marder, 225 B.R. 253 (D.Mass. 1998), stated that:

> In a bankruptcy proceeding, summary judgment is governed by Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56.  Accordingly, a judge may grant a summary judgment only where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c);  see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986).  Moreover, a court must view all reasonable inferences from the underlying facts in a light most favorable to the party opposing the motion.  See <u>Behrens v. Pelletier</u>, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996);  <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

Citizens failed to meet its burden of showing that it is entitled to judgment as a matter of law on its complaint.  While it is true that there are numerous facts that were not disputed, the court must construe those facts in the light most favorable to Marrama, <u>Anderson</u>, *supra*.  Furthermore, as also noted above, the statutory requirements for a discharge in bankruptcy are "construed liberally in favor of the debtor" and "'[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' "  <u>Commerce Bank</u>, *supra, and cases cited therein*.

In addition, as Citizens admitted, the issue here is Marrama's intent.  Where intent is at issue, it is unlikely that summary judgment will be appropriate.  <u>In re Varasso (Desmond v. Varasso)</u>, 37 F.3d 760  (1st Cir. 1994).  While circumstantial evidence may be considered, summary judgment will not lie where more than one inference can be drawn from the evidence.  <u>Id.</u>

It is also important to remember that the debt to Citizens is not one that he incurred due to <u>his own</u> actions, but rather stems from a personal guaranty of the debt of RLM Flooring, Inc. The distinction is important because actions of the corporation cannot be imputed to Marrama, personally, absent some basis for piercing the corporate veil.  Citizens offered no basis.

Viewed dispassionately in this manner, it is clear that Citizens Bank failed in its burden.


i.      Counts I, II and III - §727(a)(2)(A)

Citizens first contended that Marrama made three transfers with intent to defraud Citizens:  1)  real property in Maine; 2)  cash to Josephine Bolleterio; and 3) cash to John F. Cullen, Esq.  Given that the word "transfer" is given the broadest possible meaning, see 11 USC §101(54), and can include the transfer of mere possession as well as title, there can be no real dispute that a transfer of the real property in Maine occurred; it is Marrama's intent in making the transfer that is at issue.  Whether a transfer occurred as to the other properties also is at issue.

      a.     The Maine transfer

It is not disputed that in August, 2002, Marrama transferred certain real property in York, Maine, to Josephine Bollettiero as Trustee of the Bo-Mar Realty Trust[3]. It is also not disputed, contrary to what Citizens claims, that Marrama received consideration[4] for the transfer in the form of a 100% beneficial interest in the trust. It is also not disputed that the trust contains "spendthrift" language. The issue, as Citizens admits, is Marrama's intent in making the transfer.

Intent is to be discerned from the circumstances since direct evidence is often impracticable. FDIC v. Anchor Properties, 13 F.3d 27 (1st Cir. 1994)[5]. Accordingly, courts look to various badges of fraud, such as (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) retention by the debtor of the property involved in the putative transfer. Id.

Citizens failed to demonstrate the existence of badges sufficient to warrant denial of discharge, especially given that the reasons for denial are to be strictly construed against Citizens and must be real and substantial, not mere conjecture. Citizens offered no evidence that: 1) there was any actual or threatened litigation against Marrama at the time of the transfers; 2) the transfers involved all or substantially all of Marrama's property[6]; 3) that Marrama was insolvent[7] at the time of the transfers; or 4) that Marrama retained the property involved in the transfer. It is

---

[3]  Curiously, Citizens did not argue that the granting of a mortgage by way of refinancing was an undisclosed transfer.

[4]  Citizens argued that the debtor "admitted that there was no consideration when the Maine Property was conveyed to the Trust." This is a misrepresentation or misinterpretation of the debtor's testimony. In fact, he testified essentially that the Trust did not pay him any cash, which is not the same thing at all. In the context of the questioning, it might be presumed that had Marrama stated that he received a sum of money, the next question would have been what he did with that money. "Consideration" is a legal term of art, not always well understood by non-lawyers, and consideration may take many forms. In this case, it is undisputed that Marrama received a 100% beneficial interest in the trust, which is not only consideration but is precisely equivalent in value to the property transferred.

[5]  Citizens cited trial court decisions to support its position. Such decisions are not binding on this Court. Decisions of the First Circuit Court of Appeals *are* binding, however, and to the extent that the trial court decisions differ, they must be disregarded.

[6]  The record of the underlying bankruptcy case, of which Marrama requests that the Court take judicial notice, clearly shows that it was not.

[7]  It is not appropriate to give much weight to whether a debtor was insolvent since the overwhelming majority of American citizens are insolvent. For example, anyone with a mortgage is technically insolvent since the whole purpose of a mortgage is to acquire property for which the mortgagor is unable to pay cash.

true that the transferee was a trust of which Marrama's girlfriend is the trustee; this might be considered a "special relationship". However, a single "badge" is insufficient to shift the burden to Marrama to rebut Citizens' allegations.

In order to obtain denial of a debtor's discharge pursuant to 11 USC §727(a)(2)(A), the creditor must show that the debtor intended to "hinder, delay, or defraud [the] creditor". Citizens did not argued that Marrama intended to hinder or delay Citizens, only that he intended to defraud Citizens. "Hinder", "delay" and "defraud" must mean something different from each other. "In construing a statute we are obliged to give effect, if possible to every word Congress used." In re Baylis, 313 F.3d 9 (1st Cir. 2002), quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). Thus Citizens waived any claim as to the first two grounds.

Fraud may not be implied in law, but may be inferred as a matter of fact. Palmieri, supra. "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." In re Hammitt, 289 B.R. 670 (Bkrtcy.C.D.Ill., 2001) quoting In re Chavin, 150 F.3d 726, 728 (7th Cir.1998) (citations omitted). The creditor is required to come forward with proof of actual intent, considering a debtor's "whole pattern of conduct", but proof of harm is not required. Hammitt. In order to try to meet its burden, Citizens focuses on the alleged transfers and their omission from Marrama's statement of financial affairs. This, however, is insufficient.

As to the omission of the transfer of the Maine property, Marrama's counsel admitted that this was a scrivener's error, and Citizens did not come forth with no proof contradicting that statement or warranting an adverse inference. Where an omission from schedules can be corrected, a scrivener's error does not warrant denial of a Chapter 7 discharge, In re Ross, 217 B.R. 319 (Bkrtcy.M.D.Fla. 1998). Schedules and statements may be amended as a matter of course at any time before the case is closed, FRBP 1009(a). Given that the property constituting the res of the trust was properly disclosed on Schedule B and that the debtor forthrightly answered the Trustee's questions at the §341 meeting, Citizens failed to show a material misrepresentation or omission that Marrama knew would create an erroneous impression, Hammitt, and failed utterly to show, more particularly, that he intended to defraud Citizens. The fact that a deed was recorded at the Registry of Deeds warrants an inference that Marrama was not attempting to conceal anything. Given that the transfer to the trust was a matter of public

record, and that Citizens obtained a judicial lien against the property prior to the bankruptcy petition, it is clear that Citizens failed to demonstrate that Marrama intended to defraud Citizens by the Maine transfer.

      b.     The Bolleterio transfers

Citizens claimed that "Debtor testified that he gave Bolleterio over $108,000 for 'no reason'". That assertion is not supported by any reference to exhibits, but based on statement number 27 of the "Concise Statement of Facts", submitted by Citizens together with its motion, it would appear to be related to Exhibit Q. On reading that exhibit[8], it is clear that he deposited the money from refinancing the Maine property initially into a <u>joint</u> account and then into Josephine's account as a matter of convenience: "No reason to have two accounts". Exhibit Q at p. 5, line 13. Transferring the money into Josephine's account was arguably proper since the money was the proceeds of refinancing the mortgage on property held in a trust of which Josephine is the trustee, which money should have been under her control as trustee. Accordingly, even if the legal title was not in Marrama, he unquestionably had an equitable interest in the money, since he was the beneficiary of the trust. Marrama also testified that the money was used <u>by him</u> (not by Josephine) to pay creditors and employees of RLM, see Exhibit Q at p. 4. Thus Josephine distributed assets of the trust to Marrama, as she was permitted to do, and Marrama used the money for legitimate purposes. Citizens did not offer any evidence to prove otherwise.

> It is well-established that in a dispute between the holders of a joint account, or one joint holder and the heirs of another, the intent of the depositor determines the parties' actual ownership interests. *See, e.g.*, <u>Ball v. Forbes</u>, 314 Mass. 200, 49 N.E.2d 898, 901 (1943). Where the joint account is set up for the convenience of the depositor only, the co-signer on the account does not have an actual ownership interest that she can assert against the depositor. See <u>Bradford v. Eastman</u>, 229 Mass. 499, 118 N.E. 879, 879-80 (1918).

---

[8] Citizens admits that this exhibit is only "relevant sections" of the transcript, *see Affidavit of Michael A. Wirtz*. It is not for Citizens or attorney Wirtz to decide what is relevant. Pursuant to FRBP 7032(a)(4), Marrama was entitled to have the <u>entire</u> transcript considered by the Court, and by separate motion requested that the Court order Citizens to produce it and other documents. That motion was granted, but unfortunately the bankruptcy court granted the summary judgment motion at the same time, thus rendering Marrama's discovery request futile.

U.S. v. U.S. Currency, $81,000.00, 189 F.3d 28 (1st Cir. (Mass.),1999)[9]. Thus it is unlikely, as a matter of law, that Josephine, personally, ever had more than bare legal title to the money; if she had possession (such as a custodian), it was only as trustee of the Bo-Mar Realty Trust, of which Marrama is the 100% per cent beneficiary.  Marrama's testimony that he used the money to pay creditors (including employees and possibly even Citizens), combined with the applicable law, warranted an inference that there was no intent on Marrama's part to defraud Citizens.  The bankruptcy court should have drawn that inference, and erred in not doing so.

      c.     The Cullen transfers

      With respect to the payments to John F. Cullen, it is questionable whether these transfers are of the type which must be disclosed.  Question 10 in the Statement of Financial Affairs reads as follows:

> "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)"

      (emphasis added)

Citizens asserts, Memorandum at p. 10, fn.2, that attorney Cullen represented Marrama individually in the state court action.  As with many of Citizens' assertions, this assertion is only partially correct; the Answer to the state court Complaint[10] is signed by attorney Cullen on behalf of both Marrama and RLM Flooring, Inc.

      Accordingly, it is important to keep clear who the actor was in these transactions.  To prove that Marrama transferred property that should have been disclosed in response to Question 10, Citizens must show that: 1) with respect to his own property; 2) Marrama transferred said property; 3) other than in the ordinary course of his business or financial affairs.  Thus, if the property transferred to attorney Cullen was property of RLM Flooring; if it was transferred by way of a check from RLM Flooring; or if it was transferred in the ordinary course of his business or financial affairs, it need not be disclosed.

---

[9]  It is unclear whether the law of Maine or of Massachusetts would apply; although Marrama and Josephine are residents of Massachusetts, the trust was established under Maine law and the bank accounts were in Maine.  Maine law is probably to the same effect, however.

[10]  The Answer is found in the materials removed from state court in Adversary Proceeding no. 03-1448-WCH.

Citizens failed to provide even a scintilla of evidence in its favor on these points. It is not disputed that payments were made to attorney Cullen. However, Citizens did not provide any evidence showing that the money paid was Marrama's as opposed to that of the corporate entity[11]. Such evidence could consist of <u>personal</u> (not corporate) checks payable to attorney Cullen. Since Marrama's personal checking account was at Citizens, the evidence, yet again, is within the control of Citizens, but it has failed to come forward with such evidence. Furthermore, there is no evidence that the payments were anything other than payments "in the ordinary course of the business or financial affairs of the debtor", to quote the Statement of Financial Affairs.

Plainly this was not grounds to deny a discharge.

ii.    The assertion of the Fifth Amendment Privilege

Citizens also railed against Marrama for invoking his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. It is beyond dispute that a debtor may invoke the Fifth Amendment in a bankruptcy proceeding, <u>In re Carp</u>, 340 F.3d 15 (1st Cir. 2003). Invocation of the Fifth Amendment Privilege permits, but does not mandate, an inference against the person invoking the privilege, <u>Id.</u>  Invocation does not warrant treatment as a judicial admission of the charges in the complaint, cf. <u>In re Salzman et al</u>, 61 B.R. 878 (2nd Cir. 1986) (so holding in a §523 case).

Citizens did not allege that Marrama's invocation of the privilege "was chimerical or otherwise improper", <u>Carp</u>, supra, nor can it in this Adversary Proceeding since Counts VI (paragraph 58), VIII (paragraph 68), and IX unmistakably charge him with commission of bankruptcy crimes. Rather, Citizens only argued that the Court should make the inference against Marrama necessary to deny Marrama a discharge. However, doing so goes against the well-settled law that the requirements for a discharge are "construed liberally in favor of the debtor" and " '[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' " <u>Commerce Bank and Trust Company v. Burgess</u>, 955 F.2d 134 (1st Cir. 1992), and cases cited therein; <u>Palmacci v. Umpierrez</u>, 121 F.3d 781 (1st Cir. 1997) .  Given that Citizens failed to show an intent to defraud by the preponderance of the evidence, the

---

[11]   Citizens also did not even address the issue of whether the corporate veil should be pierced.

standard most generous to complainants, Marrama avers that the bankruptcy court should have drawn the inference in his favor and denied the motion.

The mere fact that Marrama asserted the privilege did not warrant an inference against him per se.  Citizens must show some prejudice, and has failed to do so.

> The Supreme Court has stated that the Fifth Amendment "guarantees ... the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." Spevack v. Klein, 385 U.S. 511, 514, 87 S.Ct. 625, 627, 17 L.Ed.2d 574 (1967) (quoting Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493-94, 12 L.Ed.2d 653 (1964)) (emphasis added). The concept of "penalty" includes "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.' " Id. at 515, 87 S.Ct. at 628 (quoting Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232-33, 14 L.Ed.2d 106 (1965)). … We reiterate that the balance must be weighed to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side. See S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 192 (3d Cir.1994); Wehling, 608 F.2d at 1088.  As correctly delineated by the district court in this case, "the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining it."

Serafino v. Hasbro, Inc., 82 F.3d 515 (1st Cir.  (Mass.), 1996) (affirming dismissal as a sanction for invoking the Fifth Amendment in response to discovery requests).

Marrama's invocation of the Fifth Amendment should have been upheld because Citizens failed to show any prejudice to it.  It is undisputed that Citizens was present by way of an officer of the bank and its attorney at every §341 meeting conducted by the chapter 7 trustee, some of which were joint §341 meetings and Rule 2004 examinations, see Concise Statement of Facts #28, and that Marrama attended and testified at a separate Rule 2004 examination.  It is also undisputed that Citizens had (and apparently still has) custody of all of the property (including papers, files and computers) of RLM Flooring and has liquidated much of it, see "Fact" number 6 on page 3 of Citizens' memorandum, and Citizens' Objection to Motion to Quash Subpoena (main case docket item #99)  Citizens said on numerous occasions that the records are incomplete, but has failed to specify what is missing or how it knows that it is missing, and has never provided Marrama's counsel, the Chapter 7 Trustee, or this court with an inventory of

what it seized[12].  Ultimately, Marrama's Fifth Amendment privilege should have been upheld unless Citizens showed a "substantial need for particular information and there is no other less burdensome effective means of obtaining it", <u>Serafino</u>.  A less burdensome effective means is available to Citizens:  it can simply look to the records of RLM Flooring in its possession.

Summary judgment should have been denied, and the bankruptcy court clearly erred.

iii.    Count IV – 11 USC §727(a)(2)(A)

In this Count, Citizens claimed that Marrama should be denied a discharge because he fraudulently concealed a tax return to which he was entitled.  In its summary judgment motion, Citizens addresseed this count obliquely, at best, see page 11 of Citizens' memorandum.  While it is true that the tax return was not included on Schedule B originally, Marrama testified that on the petition date, he was unaware that he was entitled to a tax refund.  As a businessman, he employed various attorneys and accountants to prepare tax returns and similar papers for him and the corporation, and reasonably relied on their advice regarding such documents.  Citizens offered no evidence contradicting Marrama's testimony or showing any fraudulent intent.  As noted before, fraud may not be implied in law, but may be inferred as a matter of fact.  <u>Palmacci v. Umpierrez</u>, 121 F.3d 781 (1st Cir. 1997).  "Intent to defraud involves a material misrepresentation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression."  <u>In re Hammitt</u>, 289 B.R. 670 (Bkrtcy.C.D.Ill., 2001) quoting <u>In re Chavin</u>, 150 F.3d 726, 728 (7th Cir.1998) (citations omitted).  The creditor is required to come forward with proof of <u>actual</u> intent, considering a debtor's "whole pattern of conduct", but proof of harm is not required.  <u>Hammitt</u>.  Because Citizens has failed to provide any evidence tending to show <u>actual</u> intent or to rebut Marrama's testimony as to his knowledge, the motion should have been denied.

iv.    Count V – 1 USC §727(a)(3)

Citizens claimed that Marrama has failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained, Complaint at

---

[12]  Citizens contents that Marrama has done no discovery on this point.  On the contrary, Marrama's discovery requests are more than broad enough to include the inventory which Citizens alleges it has.  Citizens, however, has complained that Marrama's requests are *too* broad and refused to comply.  *See Marrama's* Motion to Compel Discovery.

paragraph 52, and in part B, page 11 of the summary judgment motion, sought summary judgment denying a discharge.  However, Citizens defeated itself by admitting, in footnote 3, that "RLM's records have been inventoried by the Bank per orders of the State Action [sic] and are in storage."  It is undisputed, therefore, that Citizens seized all of Marrama's business records, i.e., the records of RLM Flooring, and apparently still has all of them.  Because the state court authorized it, Citizens could have destroyed all of the records, but apparently did not do so.  Citizens has not provided a copy of the inventory to Marrama's counsel or, to the best of counsel's knowledge, to the Chapter 7 Trustee.  Thus Citizens seizing his books and records, and then accusing him of failing to keep or preserve any recorded information is duplicitous, at best.  Citizens knows where the books and records are and is wholly in control of access to them.

Moreover, in Part B of the motion, Citizens overlooked the exception included in the Rule:  " … unless such act or failure to act was justified under all of the circumstances of the case; …"  §727(a)(3) (emphasis added).  The question then became why Marrama failed to keep or preserve any records.  The answer is quite simple:  a justice of the Superior Court of the Commonwealth of Massachusetts permitted Citizens to seize all of his records, and, if Citizens wished to do so, to destroy those records.  "The purpose of § 727(a)(3) is to ensure that a debtor provides his creditors and the bankruptcy court with sufficient information to determine the debtor's true financial condition."  In re Cromer, 214 B.R. 86 (Bkrtcy.E.D.N.Y. 1997).  "Similar to that under § 727(a)(5), § 727(a)(3) utilizes a shifting burden of proof.  Initially it is up to the plaintiff to show (1) that the debtor has failed to keep and maintain adequate books and records, and (2) that such failure renders it impossible to discern the debtor's true financial condition and identify material business transactions."  Id.  The debtor then must justify the lack of books and records.

Citizens failed to show that the burden should have been shifted because it has not shown that the books and records of RLM Flooring, in its possession, are inadequate or that even by reference to them, it was impossible to discern Marrama's true financial condition and identify material business transactions, Id.  Even if the burden were to be shifted, the failure to keep or preserve records was justified by the fact that the records were seized by Citizens pursuant to leave of the Superior Court.  In footnote 3, Citizens charged in conclusory fashion, without any evidence, that Marrama could have protected the records if he wanted to.  However, he had no way to store or safeguard the records since Citizens had taken possession of RLM Flooring's

offices, and in any event it must be assumed that Citizens would protect and preserve any records in its possession which were material to enforcing Marrama's personal guaranty of the corporate debt; it is unbelievable that Citizens would destroy records that would support a legal case against Marrama, individually, and in fact it is undisputed that Citizens has not destroyed any records. The fact that he cannot produce records is more than amply justified and explained by the fact that Citizens, itself, has possession of all of his business records. The motion should have been denied.

v.      Count VI – 11 USC §727(a)(4)(A)

In this count of the complaint, Citizens charged repeatedly that Marrama "deliberately" failed to make certain disclosures. On the summary judgment motion, Citizens limits its basis for denial of discharge to four specific assets:   1) the Maine property; 2) cash to Bolleterio; 3) cash to Cullen; and 4) the tax refund. "To deny a discharge under 11 U.S.C. § 727(a)(4)(A), the Court must find that the debtor (1) knowingly and fraudulently, (2) made a false oath in or in connection with a case, (3) relating to a material fact." In re Warner, 247 B.R. 24 (1st Cir. BAP 2000), citing, inter alia, In re Varasso (Desmond v. Varasso), 37 F.3d 760  (1st Cir. 1994). "Failure to disclose an interest in real property would be a material false oath." Id.

Marrama repeats all of section I of this memorandum as if it were fully set forth at this point as regards intent.  In Varasso, supra, the First Circuit concluded that the facts of that case were

> "consistent either with an inference of deliberateness or an inference of carelessness. In other words, the undisputed facts require a choice between competing inferences, and, since both inferences are plausible, the choice cannot be made under the banner of summary judgment."

Citizens did not come forth with any evidence of deliberateness. In fact, Citizens was just plain wrong as regards the Maine Property, as Marrama's beneficial interest in the trust which owns the property was quite clearly and explicitly disclosed on Schedule B.  As regards the cash to Bolleterio and Cullen, it is unclear why Citizens claims these are assets (see the prior argument as to this issue).  It is true that the tax refund was omitted, but Citizens has not provided any evidence that he "knowingly and fraudulently misstated a material matter", Varrasso, especially given Marrama's testimony that he was unaware that he was entitled to a tax refund.

The motion should have been denied.

vi.     Count VII – 11 USC §727(a)(6)

As with the alleged failure to disclose his beneficial interest in the Maine property,
Citizens again was just plain wrong as regards Marrama's alleged refusal to obey a lawful court
order[13].  Marrama did in fact attend numerous continued §341 meetings conducted by the
Chapter 7 trustee[14], some of which were also joint Rule 2004 examinations, and at which
Citizens was represented by an officer of the bank and its counsel.  Marrama also attended a
separate Rule 2004 examination at the office of the bank's counsel[15].  Marrama complied to the
best of his ability with every document request of the Trustee and of Citizens.  The mere fact that
there were delays in the meetings or examinations taking place or in the documents being
provided, or that Citizens was unhappy with the responses, does not warrant denial of discharge.
In re Burgess, 955 F.2d 134 (1st Cir. 1992), abrogated in part on other grounds by Field v. Mans,
116 S.Ct. 437, 516 U.S. 59, 133 L.Ed.2d 351 (1995); cf. In re Finney, 992 F.2d 43 (4th Cir. 1993)
(where the debtor was uncooperative during the Chapter 7 proceedings, requiring the bankruptcy
court to issue orders to ensure his compliance with certain of the trustee's requests, and the
bankruptcy court found that the debtor, with the intent to hinder, delay and defraud his creditors,
transferred three parcels of real property within one year prior to filing his petition, that he did
not disclose them on his schedules or statement of financial affairs, and that he made false
statements denying the transfers at the section 341 meeting of creditors, the court of appeals
sustained the debtor's one-time absolute right to convert to Chapter 13).

Citizens failed in its burden of proof in that it has failed to show in the first instance that
Marrama refused to obey a lawful[16] order of the court[17].   "The word 'refuse' in §727(a)(6)(A)
requires the Court to go further than to simply find that a debtor failed to comply with a
discovery request. Rather, it must find that the disobedience was willful or intentional."   In re
Cotsibas, 262 B.R. 182 (Bkrtcy.D.N.H. 2001).   "In order to warrant the denial of a discharge,

---

[13]  Curiously, Citizens has not made any issue of Marrama's exercise of his Fifth Amendment privilege in this part
of the motion.
[14]  The Trustee never filed motions to compel attendance.
[15]  Citizens initially refused to comply with a discovery request for a copy of the transcript of that examination.  The
bankruptcy court ordered Citizens to provide it and Citizens complied with that order.
[16]  Although the issue is not raised at this time, it is debatable whether the orders were lawful.  In this context,
"lawful" probably refers to the basis on which the orders were issued, i.e., the merits of the request for the orders,
not the authority of the court to issue them.  Marrama contested Citizens' motivation in obtaining the orders and has
not waived that issue.
[17]  Contrary to Citizen's assertion, Marrama did "challenge" the orders.  He objected to the motions and also filed a
motion to quash the subpoena.

the Debtor's failure and refusal to comply with a court order must be 'intentional and not simply sporadic or inadvertent'. An objection to discharge has 'been denied when the debtor's failure to comply with an order was due to inadvertence and mistake, as opposed to willful, intentional disobedience or dereliction.' " <u>In re Sharpe</u>, 305 B.R. 572 (Bkrtcy.M.D.Fla 2003) quoting <u>In re Barman</u>, 237 B.R. 342 (Bkrtcy.E.D. Mich. 1999).

  Citizens failed to demonstrate that Marrama's failure was "intentional and not simply sporadic or inadvertent".  The motion should have been denied.


V.  <u>Conclusion</u>

  Citizens failed to show that there were no material issues of fact.  The bankruptcy court should have investigated the basis of the appellant's exercise of his Fifth Amendment right. Having failed to do so and having drawn an inference adverse to Marrama based on that exercise, the bankruptcy court clearly erred and must be reversed, and the matter remanded for trial.


Dated:  <u>November 9, 2004</u>


        Respectfully submitted,
        Robert L. Marrama
        By his attorney,


        /s/  *David G. Baker*
        David G. Baker, Esq.
        105 Union Wharf
        Boston, MA   02109
        (617) 367-4260
        BBO# 634889

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Citizens Bank of Massachusetts,<br><br>Plaintiff<br><br>v.<br><br>Robert Louis Marrama,<br><br>Defendant | Adversary Proceeding<br>Docket Nos.   03-1443 AND<br>03-1148 |
| Robert Louis Marrama,<br><br>Appellant,<br><br>v.<br><br>Citizens Bank of Massachusetts,<br><br>Appelee | BANKRUPTCY APPEAL<br>Docket No.:   04-12109-PBS |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date below, he served the within Brief for Appellant upon the counsel for the appellee by mailing a true copy to its counsel at the address given below.

Dated:         November 10, 2004

/s/      David G. Baker
David G. Baker, Esq.
105 Union Wharf
Boston, MA   02109
(617) 367-4260
BBO# 634889

Michael A. Wirtz, Esq.
Jack Mikels & Associates
1 Batterymarch Park, Suite 309
Quincy, MA  02269