UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
IN RE                          )
   ROBERT LOUIS MARRAMA,        )  CHAPTER 7
                  Debtor.      )  CASE NO. 03-11987-WCH
_____)
                               )  ADVERSARY PROCEEDINGS
CITIZENS BANK OF MASSACHUSETTS, )  No. 03-1443-WCH
                  Plaintiff/   )  No. 03-1148-WCH
                  Appellee     )
                               )
            v.                 )  CIVIL ACTION
                               )  No. 04-12109-PBS
                               )
ROBERT LOUIS MARRAMA,          )
                  Defendant/   )
                  Appellant    )
                               )
_____)
```

**MEMORANDUM AND ORDER**

May 9, 2005

Saris, U.S.D.J.

**I. INTRODUCTION**

This is an appeal from an order of the bankruptcy court (Hillmann, J.) allowing a motion for summary judgment on behalf of Plaintiff-Appellee Citizens Bank in two consolidated adversary proceedings.[1]  The court denied Debtor-Appellant Robert Louis Marrama's discharge of indebtedness because it found an intent to defraud pursuant to 11 U.S.C. § 727(a)(2).  Marrama asserts the

_____

[1]    One adversary proceeding involved a claim to recover money based on the debtor's written guarantees and the other involved multiple counts objecting to discharge under 11 U.S.C. § 727.

bankruptcy court erred when it drew an adverse inference from Marrama's refusal to testify.

After a hearing and review of the record, the Court **AFFIRMS** the order of the bankruptcy court.

## II. FACTS

The following facts are undisputed, except where noted. Prior to filing the bankruptcy petition, Marrama had had a contentious business relationship with Citizens. He owned and operated RLM Flooring, Inc., which sold and installed flooring material. Citizens provided operating capital for the business through a line of credit, secured by corporate assets and personally guaranteed by Marrama.

On June 25, 2002, Citizens made a demand upon both RLM and Marrama for the entire indebtedness due ($254,246.68). Citizens then commenced a collection action in the Suffolk Superior Court on July 10, 2002. On August 16, 2002, the Superior Court enjoined Marrama from disposing of any assets except for normal living expenses and granted Citizens authority to seize and liquidate all of the corporation's assets.[2] RLM and Marrama were represented by Attorney John Cullen in that action.

---

[2]  The parties refer to both the August 16, 2002 order and a September 5, 2002 "supplemental order" from the state court. However, neither party filed copies of these orders with the court (although they were listed as exhibits by Citizens, they were not submitted to the Court), so this Court accepts Citizens' uncontested statements that the August 16, 2002 order gave it sufficient authority.

On March 11, 2003, Marrama filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code.  Although he listed his beneficial interest in Maine real property on Schedule B of his petition, he signed a statement of financial affairs, under the penalty of perjury, in which he stated that he had no transfers of assets within one year prior to filing his petition.

On October 22, 2003, Citizens commenced this adversary action in bankruptcy court seeking to deny Marrama a Chapter 7 discharge on four main grounds: fraudulent transfer of a home in Maine to the Bo-Mar Trust, a trust set up for Marrama's benefit, less than one year prior to filing the Chapter 7 action; fraudulent transfer of money to Marrama's girlfriend less than one year prior to filing the Chapter 7 action; fraudulent transfer of approximately $40,000 to his lawyer less than one year prior to filing the Chapter 7 action; and fraudulent concealment of an $8,745.86 tax refund.

On April 24, 2003, and again on September 19, 2003, Marrama testified at a joint § 341 creditors' meeting / Bankruptcy Rule 2004 examination.  The evidence at those proceedings supports the following facts.  Marrama was at that time and is currently the beneficiary of the Bo-Mar Realty Trust, a spendthrift trust which owns only the property located in Maine ("Maine Property").  Hr'g Tr. 4/24/03, pg. 16.  Prior to the petition date, Marrama owned this property with certain encumbrances.  Id. at 20.  His girlfriend, Josephine Bolleterio, serves as trustee.  Id. at 20.

3

He transferred this property into the Bo-Mar Trust in or around
August 2002 in exchange for a 100% beneficial interest in the
trust.  Id. at 20, 37.  The transfer was not listed on Schedule F
of Marrama's petition, but his beneficial interest in the trust
was listed on Schedule B.  Bankr. Pet. Ex. H (Mar. 11, 2003).
Marrama testified that he placed the property into trust to "try
to protect it."  Hr'g Tr. 4/24/03, at 37.[3]  Marrama lives in the
Maine Property and pays the mortgage.  Id. at 33, 35.

     At some time before the petition date, in or around July
2002, Marrama refinanced the Maine Property and placed the
proceeds from the refinancing, approximately $108,000 after some
expenditures, into an account held jointly with Ms. Bolleterio
and then into an account owned only by her.  Hr'g Tr. 11/19/03,
pgs. 3-5.  Marrama testified that he did this because she asked
him to and because there was "no reason to have two accounts."
Id. at 5.  Marrama testified that he probably used this money to
pay some of RLM Flooring, Inc.'s debts and RLM employees.
Citizens claims he produced to it no bank statements evidencing
how this money was spent, after numerous requests; however, it
appears from the portions of the transcript of the November 19

---

[3]     Debtor's counsel states that he moved to have Citizens
file the complete transcript, but the motion was granted at the
same time that the denial of a discharge was granted, making it
moot.  However, there has been no proffer by the Debtor that the
complete hearing transcript would provide any evidence to
contradict this statement, and Debtor has not provided any
additional evidence because of his assertion of the Fifth
Amendment.

hearing available to the Court that he at least partially provided explanations to the trustee.

Finally, sometime in August 2003, the Chapter 7 Trustee learned that Marrama was entitled to an $8,745.86 tax refund. Hr'g Tr. 8/27/03, pg. 4. Marrama's counsel stated that Marrama was not aware that he was entitled to a refund until around the same time. Id. at 7.

The bankruptcy court allowed Citizens to conduct discovery, ordering Marrama to appear for a debtor examination pursuant to Bankruptcy Rule 2004(a) and to produce documents. Marrama did not attend court-ordered examinations under Bankruptcy Rule 2004 on May 13, 2003 and September 10, 2003. At a joint creditor's meeting / Rule 2004 examination on September 29, 2003 he appeared but did not produce documents that Citizens requested.[4] At the November 19, 2003 final creditor's hearing, while he answered questions posed by the Chapter 7 trustee, Marrama stated that he would not answer any of the Citizens' questions because he was invoking his Fifth Amendment right against self-incrimination as he had done previously in response to interrogatories requesting information regarding property interests, loans, financial accounts, and assets, among other financial records. Daley. Aff. 3/30/04, Ex. A.

---

[4]    The record is not clear about what transpired at the hearing, but at oral argument, Citizens' counsel represented that debtor left at a break and did not return.

On April 28, 2004, Judge Hillman of the Bankruptcy Court granted Citizens' summary judgment request from the bench. He stated:

> Okay, we're here on motions for summary judgment in both cases. There standards are well established under Rule 56. The burden of proof is on the moving party on the first instance, and to defeat the motion the opposing party must produce substantial evidence of a genuine dispute as to a material fact. Material fact is one with [sic] has the potential to affect the outcome of the suit under applicable law.
>
> Now looking at the motion for summary judgment, which is supported by the various documents attached thereto, the bank has certainly made a *prima facie* case that the offenses, which are civil by the way and not criminal, are charged against this debtor defendant are substantiated. There is evidence there that disclosures were not made that should have been made, that transfers were made that should have been reported. All of these things are set out in the motion for summary judgment, and if standing alone with no opposition would certainly justify the granting of summary judgment and the denial of Marrama's discharge.
>
> One of the problems here is that the defendant debtor is in the unenviable position of wishing to claim the Fifth Amendment and defending against a motion for summary judgment. Now he contends that the bank is unable to give proof of evidence that he intended to defraud, but at the same time he claims that the bank is not prejudiced. But there was no way to find out his intent if he's claiming the Fifth because he won't tell us what his intent was. Indeed, I can and will draw a negative inference from the fact that he is standing mute when it comes to these matters which are civil and not criminal.
>
> When I come to the response to the motion for summary, which I permitted to be filed in open court today, and I look over it, I don't find anything that contradicts the assertions made in the bank's moving papers to the extent that they are necessary for me to grant summary judgment. Now I don't grant summary judgment lightly. I understand the cases in this

Circuit have very strong language about the granting of
summary judgment, and I seldom do it.  But I think this
one is a case where summary judgment is appropriate.

Taking the totality of the circumstances as
evidenced by the support for the motion of summary
judgment, I believe that the motion is well taken, and
the motion for summary judgment will be granted in both
cases.

Hr'g Tr. 4/28/04, p. 17 - 19.

Marrama filed a timely appeal.

### III. DISCUSSION

A. Standard of Review

"A bankruptcy court's order granting or denying summary
judgment is reviewed de novo."  In re Colarusso, 382 F.3d 51, 57-
58 (1st Cir. 2004) (citing In re Varrasso, 37 F.3d 760, 763 (1st
Cir. 1994)).  Federal Rule of Bankruptcy Procedure 7056
incorporates the summary judgment standards of Federal Rule of
Civil Procedure 56.  Id. at 58.  "Thus, a motion for summary
judgment should be granted only when there are no genuine issues
of material fact and when the moving party is entitled to summary
judgment as a matter of law."  Id. (citing Fed. R. Civ. P. 56(c);
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).  "As to
issues on which the movant, at trial, would be obliged to carry
the burden of proof, he initially must proffer materials of
evidentiary or quasi-evidentiary quality -- say, affidavits or
depositions -- that support his position."  In re Varrasso, 37
F.3d at 763 (citations omitted).  "[A]ll reasonable inferences

from the facts must be drawn in the manner most favorable to the
nonmovant," thus "summary judgment is inappropriate if inferences
are necessary for the judgment and those inferences are not
mandated by the record."  Id. at 763 (citations omitted) (stating
that when facts lend themselves to two plausible inferences
summary judgment is inappropriate).

    B. Intent to Defraud

    To succeed on a claim for the denial of discharge under 11
U.S.C. § 727(a)(2)(A),[5] the party requesting the denial must
prove four elements: (1) a transfer of property, (2) belonging to
the debtor, (3) within one year of the bankruptcy petition filing
date, and (4) with the intent to hinder, delay, or defraud a
creditor.  In re Watman, 301 F.3d 3, 7 (1st Cir. 2002) (citing In
re Hayes, 229 B.R. 253, 259 (B.A.P. 1st Cir. 1999)).  Because of
the seriousness of a denial of discharge, the reasons for denying
a discharge "must be real and substantial, not merely technical
and conjectural."  In re Tully, 818 F.2d 106, 110 (1st Cir. 1987)
(citations omitted).  The provisions of § 727 are "construed
liberally in favor of the debtor."  In re Watman, 301 F.3d at 7
(citing In re Burgess, 955 F.2d 134, 137 (1st Cir. 1992)).

---

    [5] 11 U.S.C. § 727(a)(2)(A) provides that: "The court shall
grant the debtor a discharge unless . . . the debtor, with intent
to hinder, delay, or defraud a creditor or an officer of the
estate charged with custody of property under this title, has
transferred, removed, destroyed, mutilated, or concealed, or has
permitted to be transferred, removed, destroyed, mutilated, or
concealed (A) property of the debtor, within one year before the
date of the filing of the petition[.]"

However, the "fresh start" objective of the Bankruptcy Code must be balanced with its other objective of ensuring that "those who seek the shelter of the Bankruptcy Code do not play fast and loose with their assets or with the reality of their affairs." In re Tully, 818 F.2d at 110.

To establish intent, the party seeking the denial of discharge must prove *actual*, as opposed to constructive, intent to defraud.  In re Watman, 301 F.3d at 8 (citation omitted). Because no debtor will admit to having an improper intent, the court may infer the debtor's actual intent from the facts and circumstances surrounding his actions.  In re Varrasso, 37 F.3d at 764 (stating that "circumstantial evidence may be sufficiently potent to establish fraudulent intent beyond hope of contradiction"); see also In re Sterman, 244 B.R. 499, 504 (D. Mass. 1999).

> [L]ooking to the circumstances surrounding the transfer, courts have identified several objective indicia that, taken together, strongly indicate fraudulent intent.  Those indicia include: (1) insider relationships between the parties; (2) the retention of possession, benefit or use of the property in question; (3) the lack or inadequacy of consideration for the transfer; (4) the financial condition of the party sought to be charged both before and after the transaction at issue; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; and (7) an attempt by debtor to keep the transfer a secret.

In re Watman, 301 F.3d at 8 (citations omitted).  Other factors

"include . . . a purported transfer of all or substantially all of the debtor's property; [and] the instrument affecting the transfer suspiciously stating that it is in fact bona fide."  <u>In re Lang</u>, 246 B.R. 463, 469 n.9 (Bankr. D. Mass. 2000) (citations omitted), <u>aff'd</u>, 256 B.R. 539 (B.A.P. 1st Cir. 2000).

Citizens has the burden of proving its § 727 objections. Fed. R. Bankr. P. 4005.

C. <u>Fifth Amendment</u>

Marrama argues that the Bankruptcy Court improperly drew an adverse inference of his intent to defraud from his assertion of the Fifth Amendment privilege.  The Fifth Amendment privilege extends to bankruptcy cases.  <u>In re McCormick</u>, 49 F.3d 1524, 1526 (11th Cir. 1995).  "In Chapter 7 liquidation cases, the Bankruptcy Code provides that absent a grant of immunity, the debtor is free to invoke his Fifth Amendment privilege and still receive a discharge from his debts."  <u>Id.</u> (citing 11 U.S.C. § 727(a)(6)(B)[6]; <u>In re Martin-Trigona</u>, 732 F.2d 170, 175 (2d Cir. 1984)).  A bankruptcy court may not deny confirmation of a reorganization plan solely because the debtor refused to testify on the basis of self-incrimination in a related proceeding.  <u>Id.</u>

---

[6] Section 727(a)(6)(B) provides: "The court shall grant the debtor a discharge, unless . . . the debtor has refused in the case . . . on a ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked."  11 U.S.C. § 727(a)(6)(B), <u>amended by</u> Bankruptcy Abuse & Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005).

at 1526.

Nonetheless, a bankruptcy court may draw a negative inference from the invocation of the Fifth Amendment privilege. In re Carp, 340 F.3d 15, 23 (1st Cir. 2003) (citing Mulero – Rodríquez v. Ponte, Inc., 98 F.3d 670, 678 (1st Cir. 1996)). "[T]he drawing of a negative inference is a permissible, but not ineluctable, concomitant of a party's invocation of the Fifth Amendment." Id. A court should not overturn a bankruptcy court's discretionary decision whether to draw a negative inference in response to the invocation of the Fifth Amendment unless it is "arbitrary and capricious." Id. at 24.

D. Alleged Transfers

Because neither party has disputed that the first three requirements of the statute are satisfied, the only issue remaining is whether Marrama effected the transfers with the requisite improper intent.

Citizens points to badges of fraud in the current record. The most salient is undisputed evidence that Marrama transferred the Maine property to the Bo-Mar Trust six months before filing the bankruptcy petition. Although Marrama disclosed his interest in the trust, he failed to disclose the transfer, which occurred in August of 2002, just when the state court litigation was heating up. Marrama's counsel explained that this was simply a scrivener's error. Regardless of counsel's intent in failing to

11

report the transfer, the key question is the debtor's motive for the transfer. Marrama swore under pains and penalty of perjury there were no transfers within one year of the commencement of the bankruptcy. The Trustee stated at the Chapter 13 conversion hearing that it was only through questioning about the trust that he discovered that Marrama transferred the property, that the transfer occurred within one year of the bankruptcy filing, that the debtor was the sole beneficiary, and that the debtor's girlfriend was the trustee. (Exhibit L to Wirtz Aff. (Transcript of 9/27/2003 hearing) at 2-3.) Marrama's own testimony admits that he transferred the property to try "to protect it." Marrama also effectively retained the property as the sole beneficiary under the trust. Additionally, Marrama's girlfriend is the trustee of the Bo-Mar Realty Trust. Marrama uses the property and pays the mortgage. Marrama repeatedly failed to attend court-ordered hearings and neglected to provide court-ordered discovery. All of these facts buttress the conclusion that the transfer of the home and the proceeds of the refinancing was intended to defraud Citizens.[7]

To boot, Marrama pled the Fifth Amendment when Citizens asked for information during discovery about the transfers and the way the money from the refinancing was spent. The Bankruptcy

---

[7]    Because of the strength of this evidence, I do not address the transfer to Attorney Cullen or the failure to disclose the tax refund; the record is also less clear on these points with respect to intent to defraud.

Court suggested that the validity of the assertion of the Fifth Amendment was unclear because Citizens' allegations of fraud were civil claims. Marrama insists that the privilege was properly exercised because throughout the bitter dispute, Citizens made accusations of a criminal nature against him. Citizens does not dispute the debtor's assertion of the Fifth Amendment. I assume the privilege was properly invoked.

Marrama also argues that the inference was improper because he did answer questions by the Chapter 7 Trustee. He points out that Citizens was not prejudiced because it had already seized most of his documents. While the Bankruptcy Court was not required to draw an adverse inference, there was no abuse of discretion in drawing this inference in light of the multiple other indicia of fraud.

In any event, there is nothing in the record to suggest that the Bankruptcy Court relied on the adverse inference when denying the discharge. Instead, he said that the record presented by Citizens standing alone would justify the granting of summary judgment. In re Varasso, 37 F.3d 760, 764 (1st Cir. 1994) (holding that in certain cases where the evidence of fraudulent intent is potent, summary judgment may be appropriate). The only evidence Marrama presented are the facts that the transfer was recorded by deed in the Registry of Deeds and that he disclosed it elsewhere, but this scintilla of evidence does not undercut the strong evidence produced by Citizens to meet its burden. The

13

adverse inference drawn from the Fifth Amendment claim was just the icing on the cake.

### ORDER

The judgment of the bankruptcy court is **AFFIRMED**.


**S/PATTI B. SARIS**
United States District Court